UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JESUS RAMON VALDES GOMEZ,

       Petitioner,

  v.

WARDEN, FLORIDA SOFT SIDE
SOUTH DETENTION CENTER,
US ATTORNEY GENERAL,

       Respondents.

_____/

Case No. 2:26-cv-1434-KCD-DNF

## ORDER

Petitioner Jesus Ramon Valdes Gomez filed a pro se habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement. (Doc. 1.)[1] As best the Court can tell, he claims that his continued detention violates the Fifth Amendment. (*Id.* at 7-8.) Respondents oppose the petition. (Doc. 10.) For the reasons below, the petition is **GRANTED**.

## I. Background

Gomez is a Cuban citizen who illegally entered the United States and was ordered removed after racking up an extensive criminal history. (Doc. 10 at 1, 4-7.) On October 27, 2025, ICE took Gomez into immigration custody to execute the removal order. Respondents state that on March 16, 2026, ICE

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

transported Gomez to the southern border to remove him to Mexico, but he refused to cooperate. (Doc. 10-1.)

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## III. Discussion

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the

2

Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. at 699. And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Applied here, Gomez satisfies the initial temporal requirement. ICE took him into custody seven months ago. Because the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Gomez has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal. He does so by pointing to a stubborn diplomatic reality: he is a citizen of Cuba, and Cuba is currently embroiled in political conflict with the United States. And though the Government told Gomez that it plans to remove him to Mexico, no plans have materialized. (*See* Docs. 1 at 7; 10-1.) Indeed, the Government has had many

3

years to deport Gomez, and it has failed. This is more than enough reason to believe his removal is nowhere in sight.

The burden thus shifts to the Government to rebut Gomez's showing, but they fail to do so. *Akinwale*, 287 F.3d at 1052. This outcome should come as no surprise—the record offers no documents, no diplomatic agreements, and no concrete evidence that Gomez will be removed in the near future. (Doc. 10.) Instead, the Government proffers that it attempted to remove Gomez to Mexico, but he "failed to comply with removal." (Doc. 10-1 at 2.) That's it. The Government provides no further details about how Gomez failed to cooperate or what occurred. Because the Government offers little to show that Gomez has impeded his own removal and offers nothing to suggest that his removal to Mexico, or anywhere else, is more likely now than it was decades ago, Gomez must be released.

It is easy to see why this outcome might cause unease. Gomez is a convicted criminal. Yet, because the Government is completely unable to effectuate his removal, he has been allowed to live in this country for decades without facing the ultimate immigration consequence. But this Court is bound by the law. And the law is clear: the Government cannot lock individuals in a cell indefinitely as a workaround for a stalled deportation process, nor can it use indefinite detention simply to placate popular opinion. *Zadvydas*, 533 U.S. at 659. The Constitution cannot be ignored just because the facts are

4

frustrating. If there is a flaw in a system that leaves convicted criminals in a state of perpetual immigration limbo, the remedy lies in the halls of Congress or with the Executive branch—not with a federal judge.

### IV. Conclusion

Because the Government cannot show any real prospect of deportation, the Court finds no significant likelihood that Gomez will be removed in the reasonably foreseeable future. He is therefore entitled to release from ICE custody under *Zadvydas*. But that release is not a free pass—he remains subject to the strict conditions of his prior order of supervision. To the extent Gomez raised any other claims, they are denied. He is entitled to no other relief from the facts presented.

Accordingly, it is **ORDERED:**

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as set forth above.

2. Respondents are ordered to **RELEASE** Petitioner Jesus Ramon Valdes Gomez from custody within 48 hours of this Order under the prior conditions of supervision, which Petitioner must continue to comply with.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**ORDERED** in Fort Myers, Florida on May 28, 2026.

Kyle C. Dudek
United States District Judge